UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CR-00319-SRC |
| | ) | |
| TREVON CARSON, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are Defendant Trevon Carson, represented by defense counsel Michelle L. Monahan, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A) and (B), Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Count One (Conspiracy to distribute marijuana) and Count Two (discharge of a firearm in furtherance of a drug-trafficking crime resulting in death) the Government agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law arising out of the events alleged in the Indictment (ECF 14), the Superseding Indictment (ECF 43), and the Superseding Information, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. Defendant further understands, that, in exchange for Defendant's voluntary pleas of guilty to Count One and Two of the Superseding Information, the United States will recommend that the appropriate sentence in this matter will be as follows:

1. 60 months' imprisonment as to Count One to be imposed **consecutively** to the sentence imposed as to Count Two, followed by a term of supervision of at least two years; and

2. 180 months' imprisonment as to Count Two, to be impose **consecutively** to the sentence imposed as to Count One, followed-by three years of supervision.

Defendant remains free to recommend whatever sentence Defendant deems appropriate. The parties understand that the Court is neither a party to, nor bound by, the Guidelines recommendations agreed to in this document.

## 3. ELEMENTS:

As to Count One, Defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(i)    One, on or about May 25, 2023, Defendant and Co-Defendant Earl Hill reached an agreement or came to an understanding to possess with the intent to distribute marijuana, a Schedule I controlled substance;

(ii)   Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

(iii)  At the time Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

2

As to Count Two, Defendant admits to knowingly violating Title 18, United States Code, Section 924(c)(1)(A) as punishable by Title 18, United States Code, Sections 924(j)(2) and 1112(b), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(i)    Defendant committed the crime of conspiracy to possess with the intent to distribute marijuana as charged in Count One;

(ii)   Defendant knowingly discharged a firearm in furtherance of that crime;

(iii)  Defendant used the firearm to unlawfully cause the death of Erik L. Alford-Smith; and

(iv)   Defendant acted in the heat of passion caused by adequate provocation, which is manslaughter as defined by Title 18, United States Code, Section 1112.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On the morning of May 25, 2023, Co-defendant Hill, who went by the nickname, "Man Man," exchanged text messages with Witness-1. A screenshot of a portion of those messages is below:



Over the course of the communications with Witness-1, Co-defendant Hill arranged to meet Witness-1 so that Co-defendant Hill could purchase a quantity of marijuana that could be redistributed.

At or near the time Co-defendant Hill arranged to meet Witness-1, Co-defendant Hill also communicated with Defendant Carson via cellular telephones. Defendant Carson agreed to travel with Co-defendant Hill to the meeting with Witness-1.

Defendant Carson agreed to drive Co-defendant Hill to the meeting with Witness-1 in Defendant Carson's Camaro. After speaking with Co-defendant Hill, Defendant Carson drove from Defendant Carson's residence on Ameristar Boulevard in St. Charles, Missouri, to Co-defendant Hill's residence located in Ferguson, Missouri. From there, Defendant Carson drove Co-defendant Hill to the agreed meeting location within the City of St. Louis. The City of St.

4

Louis's license plate reader system (LPRS) captured Defendant Carson's Camaro traveling toward the direction of the meeting with Witness-1.

Defendant Carson and Co-defendant Hill arrived at the meeting location, which was in the alley behind 4814 Farlin Avenue, St. Louis, Missouri, which is within the Eastern District of Missouri. At the meeting spot, Defendant Carson understood that the purpose of the meeting was to purchase a quantity of marijuana that could be redistributed. Co-defendant Hill and Witness-1 discussed the sale of marijuana while Defendant Carson sat in the driver's seat and Victim A.S. remained nearby.

As Witness-1 discussed the sale of marijuana with Co-defendant Hill, Victim Erik L. Alford-Smith approached Defendant Carson's Camaro holding an AR-style firearm. Fearing that Erik L. Alford-Smith would fire the AR-style firearm toward Defendant Carson and Co-defendant Hill, Defendant Carson exited from the driver's side of his Camaro and walked around the back of the Camaro. When Defendant Carson came around the Camaro, Defendant Carson brandished a handgun and fired multiple rounds toward Victim Erik L. Alford-Smith. Victim Erik L. Alford-Smith was struck by Defendant Carson's gunfire and fell, Victim Erik L. Alford-Smith's body was and died as a result. recovered later in the day at the scene.

After Defendant Carson fired at Victim Erik L. Alford-Smith, Defendant Carson collected the AR-style firearm from Victim A.S. and rejoined Co-defendant Hill in the Camaro. Defendant Carson drove Co-defendant Hill north, toward the area of 4409 Vandals Drive, Florissant, Missouri. This is the address where Defendant Carson's family resides. Telephone location data tracked the movements of Co-defendant Hill's cellular telephone as well as Defendant Carson's cellular telephone.

5

On June 6, 2023, after the May 25 shooting, investigators with the Federal Bureau of Investigation and homicide detectives with the St. Louis Metropolitan Police Department obtained a search warrant from the U.S. District Court for the Eastern District of Missouri authorizing the search of Defendant Carson's residence. That search warrant was docketed as *In the Matter of the Search of the Premises Located at 229 Ameristar Boulevard, Apt. 207, St. Charles, Missouri 63301*, No. 4:23-MJ-7188-SPM (E.D.Mo. June 6, 2023). Defendant Carson's residence was apartment 207, located at 229 Ameristar Boulevard, St. Charles, Missouri, which is within the Eastern District of Missouri. That search warrant further authorized agents and task force officers with the FBI to search for and seize firearms.

On June 13, 2023, agents and task force officers with the FBI executed the search warrant on Defendant's Ameristar Boulevard residence. At the time the agents and task force officers with the FBI executed that warrant, Defendant, Defendant's girlfriend, and a minor child were in Defendant's residence. Within Defendant's bedroom, agents and task force officers with the FBI located an Anderson Manufacturing, AR-15 style firearm, loaded with 21 rounds of 300 blackout ammunition and three loaded handguns. Defendant's girlfriend was interviewed on June 13, 2023, and confirmed that the firearms belonged to Defendant.

## 5. **STATUTORY PENALTIES:**

Defendant fully understands that the maximum possible penalty provided by law for Count One, to which Defendant is pleading guilty is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than two years and up to a term of lifetime supervision.

Defendant fully understands that the maximum possible penalty provided by law for Count Two, to which Defendant is pleading guilty is imprisonment of not more than 15 years, a fine of

not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

In the event Defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, Defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

6. **U.S. SENTENCING GUIDELINES (2024 MANUAL):**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply and do not apply as indicated below.

### Count One
**(Conspiracy to Possess with the Intent to Distribute Marijuana)**

a.     **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the Base Offense Level is 6, as found in U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(17), because the quantity of marijuana for which Defendant is accountable, including relevant conduct, is unspecified.

As to Count One, Defendant may be found to a be a Career Offender under U.S.S.G. § 4B1.1. Defendant has fully discussed this provision with his counsel and is fully aware that if he is determined to be a Career Offender, he will be subject to the base offense level of 29 under U.S.S.G. § 4B1.1(b)(4)[1], and Criminal History category VI under U.S.S.G. § 4B1.1(b).

---

[1] Pursuant to U.S.S.G. § 4B1.1, cmt. 2, Defendant's base offense level, when "more than one count of conviction is of a...controlled substance offense" as is the case here, is determined by the "maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum."

Because Defendant is also pleading guilty to a violation of 18 U.S.C. § 924(c), Defendant understands that if he is determined to be a Career Offender, then, pursuant to U.S.S.G. § 4B1.1(c), his applicable guideline range may be determined by the table set forth in U.S.S.G. § 4B1.1(c)(3).

(2)  **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics do and do not apply in the event Defendant is not determined to be a Career Offender:

1.  Pursuant to Section 2D1.1(b)(1), two levels are assessed because Defendant possessed a dangerous weapon.

3.  Pursuant to Section 2D1.1(b)(2), two levels are assessed because Defendant used violence in the course of the offense.

2.  Sections 2D1.1(b)(3) through 2D1.1(b)(18) do not apply.

(3)  **Cross References**:  Based on the evidence available to the United States, the United States would be unable to prove by a preponderance of the evidence that a victim was killed under circumstances that would constitute First Degree Murder or Second Degree Murder as defined under 18 U.S.C. § 1111. Based on the evidence available to the United States, the parties agree that the United States would be able to prove by a preponderance of the evidence that a victim was killed under circumstances that involved a "sudden quarrel" as that term is used in 18 U.S.C. § 1112. Consequently, the parties agree that Section 2D1.1(d)(1) does not apply.

### Count Two
### (Discharging a Firearm in Furtherance of a Drug-Trafficking Crime Constituting Voluntary Manslaughter)

a.      **Chapter 2 Offense Conduct**:

8

(1) **Base Offense Level**: The parties agree that the Base Offense Level is 29, as found in U.S.S.G. § 2A1.3.

As to Count Two, Defendant may be found to a be a Career Offender under U.S.S.G. § 4B1.1. Defendant has fully discussed this provision with his counsel and is fully aware that if he is determined to be a Career Offender, he will be subject to the base offense level of 29 under U.S.S.G. § 4B1.1(b)(4), and Criminal History category VI under U.S.S.G. § 4B1.1(b).

Because Defendant is also pleading guilty to a violation of 18 U.S.C. § 924(c), Defendant understands that if he is determined to be a Career Offender, then, pursuant to U.S.S.G. § 4B1.1(c), his applicable guideline range may be determined by the table set forth in U.S.S.G. § 4B1.1(c)(3).

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics do and do not apply: None.

b. **Chapter 3 Adjustments**:

(1)    **Acceptance of Responsibility**: The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction—including any violation of this agreement—the Government may

9

present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

(2) **Other Adjustments**: The parties have no further agreement regarding any other adjustments.

c. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level will be 26.

Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not a Career Offender.

d. **Criminal History**: The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

10

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

a. **Appeal**: Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(2) **Sentencing Issues**: The parties agree to waive the right to appeal all sentencing issues.

b. **Habeas Corpus**: Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records**: Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER**:

a. **Disclosures Required by the United States Probation Office**: Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

11

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration, and costs of supervision. Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, any fine or restitution imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments,

12

Defendant agrees that it is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset.

Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). An offense listed in Section 3663A gave rise to this plea agreement. Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. Defendant agrees to provide full restitution to all victims of all charges contained in the Superseding Information.

Defendant agrees to pay restitution to all victims listed in the restitution questionnaire, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A. Defendant understands that the Court has an obligation to determine whether, and in what amount, restitution applies in this case under 18 U.S.C. § 3663 and 18 U.S.C. § 3663A.

f. **Forfeiture**: Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees to abandon Defendant's interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the

13

disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

14

and satisfactorily explored all areas which Defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.


November 17, 2025
_____
Date

_____*Ryan Finlen*_____
C. RYAN FINLEN, #6305918 (IL)
Assistant United States Attorney


_____
Date

_____*T. Carson*_____
TREVON CARSON
Defendant

_____
Date

_____
MICHELLE L. MONAHAN
Attorney for Defendant


16